UNITED STATES of America, Appellee,

v.

Fred CLINE and wife Luzene Cline, Appellants.

No. 8596.

United States Court of Appeals Fourth Circuit.

Argued June 11, 1962.

Decided Aug. 22, 1962.

———◆———

Herbert L. Hyde, Asheville, N. C. (Van Winkle, Walton, Buck & Wall, Asheville, N. C., on brief), for appellants.

Edmund B. Clark, Bethesda, Md. (Ramsey Clark, Asst. Atty. Gen., William Medford, U. S. Atty., and Roger P. Marquis and A. Donald Mileur, Attys., Dept. of Justice, on brief), for appellee.

Before SOPER and BRYAN, Circuit Judges, and LARKINS, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Eviction of Fred Cline and his wife from certain land in North Carolina was ordered by the District Court at the suit of the United States on the finding that its ward—the Eastern Band of Cherokee Indians—was the owner and the Clines were without any right of occupancy of the property.* This appeal of the Clines, in putting before us generally the issue of title to the land, first requires consideration of the appellants' attack upon the exclusion at trial of a deed and survey in which they laid much store to refute the claim of the Government. The ruling on the evidence, we think, was error. With the adjudication by the trial court thus resting upon incomplete proof, we do not consider the correctness of the court's determination of title.

The central fact in the case is a conveyance, by deed of July 1, 1924 duly recorded, whereby the Indians granted to Bryson City, North Carolina about 25 acres of their reservation in Swain County lying "on the waters of the Ocona Lufty River" within the reservoir area of a proposed hydroelectric development of the City. An increase in height of the dam was proposed and the acquisition was required to take care of the resulting enlargement of the impoundage of water. On July 21, 1925 the Cherokees deeded the remainder of the reservation to the United States to hold in trust for them. The City sold and transferred the identical 25-acre tract on July 1, 1942 to Nantahala Power and Light Company. Cline afterwards built a motel and appurtenances along the river, located either within the 25 acres or within the Government's ownership: this is the question in suit. The District Judge denied the Cline claim that their occupancy was inside the 25 acres and outside the Government's trust. Hence he ejected them.

The Cline claim was twofold. The first assertion was based on the elevation of the water level. Bryson City was, as noted, acquiring the additional area for the purpose of containing the water as it was backed up from an increased height of the dam. According to the deed the exterior boundaries of the added area were, generally, "on a level line with the indentation of the River Bank" and encompassed "25 acres pond area more or less". "Level line" referred to the edge of the water as it "might hit on the ground" at a "determined elevation": it is a contour line. Cline would be situated, he maintained, within the spread

* Two tracts were originally involved but the appellants conceded the Government's right paramount in one of them. The trial court considered, and this opinion consequently relates, only to the other parcel.

of the "pond area" (the dam was never raised) if the level line were run at the higher elevation he asserts and the Government denies.

The other basis of the Cline claim was the terms of the metes and bounds—as distinguished from the level line—given in the deed. Cline contended that in fixing the bounds above—upstream from —a point designated in the description as the "limit of normal back water", the deed did not employ the level line but instead gave courses and distances. The latter, he concluded, brought him within the 25 acres.

The Government's survey—made by Davis, a civil engineer—adopted an elevation lower than Cline's and also used the level-line-indentation measurement everywhere in the perimeter of the survey—upstream as well as downstream of the back water limits. This method excluded the Cline site from the 25 acres.

Corroborating Davis for the Government was Nantahala Power's engineer, Cabe. He testified that his company had bought and obtained the identical property which the Indians had conveyed to Bryson City and that Cline was not within it. He verified his statements by reference both to the deed to Nantahala and the survey attached, which was a map of the 25 acres made by one Charles E. Waddell, a civil engineer, in 1923.

Cline's expert was Herron, a surveyor licensed and registered in North Carolina. He had referred to the Waddell survey which, he states, stipulates an elevation six feet above Davis'. This is the elevation asserted by Cline. Herron super-imposed upon the Davis map a delineation of the 25 acres according to this higher and more inclusive contour.

This put Cline within the 25 acres. Cline also adverts to the Waddell survey for support of his argument that the courses and distances—not the water level line— in the Cherokee-Bryson City deed placed Cline within the 25-acre tract.

The Waddell survey and the Nantahala deed exhibiting it were tendered in evidence by Cline but their admission was refused. The District Judge held these muniments without relevancy because he believed neither party to the action claimed through them. Here was error.

This deed with the map attached had, as just mentioned, been previously vouched by the United States through the witness Cabe. In fact his reference to these papers would seem to have put them in evidence for all purposes. But the Waddell map had a far stronger claim to recognition. It was the survey underlying the deed from the Indians to Bryson City, an instrument binding the United States because executed by its predecessor in title and present cestui que trust. That deed wholly barred the Government if Cline were found within its outlines. In designating the property which the City intended to buy and the Cherokees to sell, the deed set it forth as "approximately 25 acres of land * * as per survey of Chas. Waddell, Civil Engineer." So integrally touching the controversy, the Nantahala deed and accompanying map could not be rejected without prejudice to the appellants Cline.

Other subsidiary rulings are questioned on this appeal but we see no substance in the challenges. The judgment of the District Court must be reversed and a new trial granted Cline.

Reversed and remanded.